# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

**FILED**

**October 30, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-1325

**PNGI CHARLES TOWN GAMING, LLC,
D/B/A HOLLYWOOD CASINO AT CHARLES TOWN RACES,**
Plaintiff Below, Petitioner

**V.**

**WEST VIRGINIA RACING COMMISSION,**
Defendant Below, Respondent

Appeal from the Circuit Court of Kanawha County
Honorable Tod J. Kaufman, Judge
Civil Action No. 12-C-753
**AFFIRMED**

Submitted: October 1, 2014
Filed: October 30, 2014

Stuart A. McMillan
Bowles Rice LLP
Charleston, West Virginia
Brian M. Peterson
Bowles Rice LLP
Martinsburg, West Virginia
Attorneys for the Petitioner

Patrick Morrisey
Attorney General
Kelli D. Talbott
Senior Deputy Attorney General
David A. Stackpole
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent

**CHIEF JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.     "A circuit court's entry of summary judgment is reviewed *de novo*." Syllabus point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.     "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."  Syllabus point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

3.     "An ejection of a permit holder by either a racing association or the stewards is subject to review by the West Virginia Racing Commission as set forth in West Virginia Code § 19-23-6 (2007 & Supp. 2011) and West Virginia Code of State Rules § [178-1-6.1]."  Syllabus point 3, *PNGI Charles Town Gaming, LLC v. Reynolds*, 229 W. Va. 123, 727 S.E.2d 799 (2011).

4.     The West Virginia Racing Commission has properly established, by procedural rule promulgated at 178 W. Va. C.S.R. 6 § 4.7.d., that, "[i]n any hearing on an appeal by a permit holder of an ejection [of said permit holder] by an association, the association shall have the burden of proving by a preponderance of the evidence that the

i

permit holder acted improperly or engaged in behavior that is otherwise objectionable pursuant to 178 W. Va. C.S.R. 1 § 6.2. or 178 W. Va. C.S.R. 2 § 6.2."

5. "Administrative agencies and their executive officers are creatures of statute and delegates of the Legislature. Their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. They have no general or common-law powers but only such as have been conferred upon them by law expressly or by implication." Syllabus point 3, *Mountaineer Disposal Service, Inc. v. Dyer*, 156 W. Va. 766, 197 S.E.2d 111 (1973).

6. Pursuant to 178 W. Va. C.S.R. 6 § 4.3., the West Virginia Racing Commission has the authority to grant a stay to a permit holder who has been ejected by a racing association.

**Davis, Chief Justice:**

Petitioner, PNGI Charles Town Gaming, LLC, d/b/a Hollywood Casino at Charles Town Races (hereinafter "PNGI"), appeals a decision of the Circuit Court of Kanawha County that granted summary judgment to the respondent, the West Virginia Racing Commission (hereinafter "the Racing Commission"), and upheld two administrative rules promulgated by the Racing Commission without legislative approval. The two rules relate to the Racing Commission's review of a racing association's ejection of a permit holder from its premises. PNGI argues that the circuit court erred in finding the two rules, one placing the burden of proof on the racing association and the other granting the Racing Commission the power to grant a stay of an ejection pending review, were procedural, and, therefore, did not require legislative approval. We find no error in the circuit court's rulings. Therefore, we affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This Court's decision in *PNGI Charles Town Gaming, LLC v. Reynolds*, 229 W. Va. 123, 727 S.E.2d 799 (2011), clarified that permit holders[1] ejected from a racing

---

[1]The term "permit holder" refers to "any person holding a permit required by the provisions of section two [§ 19-23-2] of this article and issued under the provisions of this article[.]" W. Va. Code § 19-23-3(13) (2011) (Supp. 2014). W. Va. Code § 19-23-2(a) (1975) (Repl. Vol. 2007), in turn, provides that:

(continued...)

1

association had the right to appeal their ejections to the Racing Commission: "[a]n ejection of a permit holder by either a racing association or the stewards is subject to review by the West Virginia Racing Commission as set forth in West Virginia Code § 19-23-6 (2007 & Supp. 2011) and West Virginia Code of State Rules § [178-1-6.1]."[2] Syl. pt. 3, *Reynolds,* 229 W. Va. 123, 727 S.E.2d 799.

Following the *Reynolds* decision, the Racing Commission revised its procedural rules to add new rules governing its review of permit holder ejections. Two of

---

[1](...continued)

No person not required to be licensed under the provisions of section one [§ 19-23-1] of this article shall participate in or have anything to do with horse or dog racing for a purse or a horse or dog race meeting at any licensee's horse or dog racetrack, place or enclosure, where the pari-mutuel system of wagering upon the results of such horse or dog racing is permitted or conducted, *as a horse owner, dog owner, jockey, apprentice jockey, exercise boy, kennel keeper, trainer, groom, plater, stable foreman, valet, veterinarian, agent, clerk of the scales, starter, assistant starter, timer, judge or pari-mutuel employee, or in any other capacity specified in reasonable rules and regulations of the Racing Commission unless such person possesses a permit therefor from the West Virginia Racing Commission* and complies with the provisions of this article and all reasonable rules and regulations of such Racing Commission.

(Emphasis added).

[2]At the time the opinion in *PNGI Charles Town Gaming, LLC v. Reynolds* was handed down, the regulation cited in Syllabus point 3 was located at 178 W. Va. C.S.R. 1 § 4.7. Due to subsequent amendments to the Racing Commission's procedural rules, the cited provision is now found at 178 W. Va. C.S.R. 1 § 6.1. For ease of reference, we will utilize the current citation when referring to this regulation.

2

the new rules adopted by the Racing Commission are the subject of this appeal. One of the

rules herein challenged states:

> In any hearing on an appeal by a permit holder of an ejection by an association, the association shall have the burden of proving by a preponderance of the evidence that the permit holder acted improperly or engaged in behavior that is otherwise objectionable pursuant to 178 CSR 1, § 6.2. or 178 CSR 2, § 6.2.

178 W. Va. C.S.R. 6 § 4.7.d.[3] The other challenged rule provides, in part:

> A permit holder who has been ejected by an association may apply for a stay to the Racing Commission or to the member of the Racing Commission designated to rule upon stay requests.

178 W. Va. C.S.R. 6 § 4.3.a.

On January 19, 2012, the Racing Commission published its proposed

amendments to 178 W. Va. C.S.R. 6, which included earlier versions of the above quoted

rules, for public comment. During the comment period, PNGI suggested that the rules

altered existing substantive law and, thus, required legislative approval. The Racing

Commission disagreed, finding the rules were merely procedural.[4]

---

[3]178 W. Va. C.S.R. 1, § 6.2. governs horse racing, while 178 W. Va. C.S.R. 2, § 6.2 pertains to dog racing; the two rules are nearly identical.

[4]The Racing Commission did amend the burden of proof rule in response to comments by PNGI. The initial version of that rule apparently would have upheld an ejection of a permit holder only when the racing association proved by a preponderance of the evidence that the ejected permit holder's "presence or conduct is detrimental to the best interests of racing or to the orderly conduct of a race meeting." The final version of the rule,

(continued...)

On March 22, 2012, the Racing Commission filed with the Secretary of State its newly modified procedural rules.[5] Thereafter, the Racing Commission began issuing notices of appeal for racing association ejections under the new rules. Before the first hearing, PNGI filed a petition in the Circuit Court of Kanawha County seeking a writ of prohibition and declaratory judgment arguing that the rules had not been properly promulgated under the West Virginia Administrative Procedures Act. PNGI sought to prohibit the Racing Commission from conducting hearings under the new rules and further sought a declaration that the burden of proof rule and the stay rule were unlawful. PNGI also sought a stay of all ejection appeals pending the circuit court's decision of the matter. The Racing Commission filed a memorandum in opposition. The circuit court denied PNGI's requested stay and dismissed the entire case from its docket based upon its conclusion that the action was premature.

PNGI then filed a motion to alter or amend, and the Racing Commission responded in opposition to the motion. Following a hearing on February 27, 2013, the circuit court reinstated PNGI's declaratory judgment claim. The circuit court ordered the parties to

[4](...continued)
quoted above, tracks the language of the legislative rules adopted by the Racing Commission setting the standard for ejections in thoroughbred racing and greyhound racing, which allow ejection of "persons acting improperly or whose behavior is otherwise objectionable." 178 W. Va. C.S.R. 1 § 6.2. (thoroughbred racing); 178 W. Va. C.S.R. 2 § 6.2. (greyhound racing).

[5]The amended rules became effective on April 21, 2012.

file cross-motions for summary judgment. On November 14, 2013, the circuit court entered its final order granting summary judgment to the Racing Commission. The circuit court found the challenged rules were procedural rather than legislative and, therefore, were properly adopted without the need for legislative approval. The circuit court also concluded that the Racing Commission possessed inherent authority to issue a stay of a racetrack's ejection decision. It is from this order that PNGI now appeals.

## II.

## STANDARD OF REVIEW

The instant case is before this Court on appeal from a circuit court order granting summary judgment. It has been well established that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting our plenary review, we are mindful that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). With these standards in mind, we will consider the issues raised.

5

# III.

# DISCUSSION

The Racing Commission has promulgated a set of procedural rules to specify "the procedure for hearings conducted before the Boards of Stewards, the Boards of Judges and the West Virginia Racing Commission."  178 W. Va. C.S.R. 6 § 1.1.[6]  These rules are located in Series 6 of Title 178 of the West Virginia Code of State Regulations (178 W. Va. C.S.R. 6).  In response to this Court's decision in *Reynolds*, which recognized that West Virginia law provided an ejected permit holder with the right to have the Racing Commission review his or her ejection by a racing association, the Racing Commission revised Series 6 of Title 178 to establish the procedure by which such ejection appeals would be heard.  In the instant appeal, PNGI challenges two of these newly adopted amendments: the rule establishing the burden of proof for ejections by a racing association, 178 W. Va. C.S.R. 6 § 4.7.d., and the rule allowing the Racing Commission to grant a stay of a

---

[6]Pursuant to W. Va. Code § 19-23-6(3) (2011) (Supp. 2014), the Racing Commission is granted the "plenary power and authority" to

> promulgate reasonable rules implementing and making effective the provisions of this article and the powers and authority conferred and the duties imposed upon the Racing Commission under the provisions of this article, including, but not limited to, reasonable rules under which all horse races, dog races, horse race meetings and dog race meetings shall be held and conducted, all of which reasonable rules shall be promulgated in accordance with the provisions of article three [§§ 29A-3-1 et seq.], chapter twenty-nine-a of this code . . . .

permit holder's ejection by a racing association pending review, 178 W. Va. C.S.R. 6 § 4.3.

We consider each of these rules in turn.

### A. Burden of Proof Rule

The burden of proof rule challenged by PNGI provides that,

> [i]n any hearing on an appeal by a permit holder of an ejection by an association, the association shall have the burden of proving by a preponderance of the evidence that the permit holder acted improperly or engaged in behavior that is otherwise objectionable pursuant to 178 CSR 1, § 6.2. or 178 CSR 2, § 6.2.

178 W. Va. C.S.R. 6 § 4.7.d.

PNGI argues that the circuit court erred in concluding that the foregoing rule regarding the burden of proof is a procedural rule that may be adopted by an administrative agency without legislative approval rather than a legislative rule that requires legislative approval in order to be valid.

We begin our analysis by examining The West Virginia Administrative Procedures Act (hereinafter "the Act"). In conducting this analysis, we are mindful that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548,*

7

*Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). The Act

"establishes . . . procedures for rule making" by administrative agencies in this State.

W. Va. Code § 29A-1-1 (1982) (Repl. Vol. 2012). Pursuant to the Act, the term "rule"

> includes every regulation, standard or statement of policy or interpretation of general application and future effect, including the amendment or repeal thereof, affecting private rights, privileges or interests, or the procedures available to the public, adopted by an agency to implement, extend, apply, interpret or make specific the law enforced or administered by it or to govern its organization or procedure, but does not include regulations relating solely to the internal management of the agency, nor regulations of which notice is customarily given to the public by markers or signs, nor mere instructions. *Every rule shall be classified as "legislative rule," "interpretive rule" or "procedural rule," all as defined in this section, and shall be effective only as provided in this chapter*[.]

W. Va. Code § 29A-1-2(I) (1982) (Repl. Vol. 2012). Relevant to our analysis, the Act

elaborates on the term "rule" by setting out definitions for the terms "legislative rule" and

"procedural rule." Thus, we next will consider each type of rule.

      **1.**     **The Burden of Proof Rule Is Not a Legislative Rule.** The term

"legislative rule" is defined by the Act as

> every rule, as defined in subsection (I) of this section, proposed or promulgated by an agency pursuant to this chapter. Legislative rule includes every rule which, when promulgated after or pursuant to authorization of the Legislature, has (1) the force of law, or (2) supplies a basis for the imposition of civil or criminal liability, or (3) grants or denies a specific benefit. Every rule which, when effective, is determinative on any issue affecting private rights, privileges or interests is a legislative

8

rule. Unless lawfully promulgated as an emergency rule, a legislative rule is only a proposal by the agency and has no legal force or effect until promulgated by specific authorization of the Legislature. . . .

W. Va. Code § 29A-1-2(d). According to the plain language of the foregoing provision, in order to fall within the definition of a legislative rule, 178 W. Va. C.S.R. 6 § 4.7.d. must either have "the force of law, or . . . suppl[y] a basis for the imposition of civil or criminal liability, or . . . grant[] or den[y] a specific benefit." W. Va. Code § 29A-1-2(d). PNGI argues that the burden of proof rule denies them of a specific benefit. We disagree.

The specific benefit at issue in these proceedings is a racing association's power to eject a permit holder from its premises, and the restrictions that have been placed upon that power. Notably, however, that power and the restrictions placed thereon are governed by provisions other than the burden of proof rule found at 178 W. Va. C.S.R. 6 § 4.7.d. In fact, the source of a racing association's power to eject, as well as the restrictions thereon, was discussed in this Court's opinion in *PNGI Charles Town Gaming, LLC v. Reynolds*, 229 W. Va. 123, 727 S.E.2d 799. In *Reynolds*, this Court explained that

> [i]ncorporated into the legislative scheme regulating horse racing is a recognition *by the Legislature* that an association can eject a person from its grounds. Specifically, West Virginia Code of State Rules and Regulations § [178-1-6.1][7] provides:

---

[7]See *supra* note 2 for an explanation of why this citation has been altered
(continued...)

9

Any person ejected by the stewards or the association from the grounds of an association shall be denied admission to the grounds until permission for his or her reentry has been obtained from the association and the Racing Commission. ***However all occupation permit holders who are ejected have the right of appeal to the Racing Commission.***

*Id*. (Emphasis added). The concept of allowing a licensed racing association like CTR & S to eject a person from its grounds undoubtedly arises from the common law. The United States Supreme Court in *Marrone v. Washington Jockey Club*, 227 U.S. 633, 33 S. Ct. 401, 57 L. Ed. 679 (1913), first recognized the common law right of a racetrack to exclude a patron by holding that such exclusions by racetracks under the common law were not actionable. *See James v. Churchill Downs, Inc*., 620 S.W.2d 323, 324 (Ky. Ct. App. 1981); *Garifine v. Monmouth Park Jockey Club*, 29 N.J. 47, 148 A.2d 1, 5 (1959), *superceded by statute as stated in Uston v. Resorts Intern. Hotel, Inc*., 89 N.J. 163, 445 A.2d 370 (1982); *see also* Bennett Liebman, *The Supreme Court and Exclusions by Racetracks*, 17 Vill. Sports & Ent. L.J. 421 (2010) (recognizing that "[i]n 1913, the United States Supreme Court in *Marrone v. Washington Jockey Club*, through a decision authored by Justice Oliver Wendell Holmes, established this principle of total management discretion in racetrack exclusions."). It is important to note that the issue before the Court does not concern an exclusion of a mere patron from a racetrack.

*The express language of West Virginia Code of State Rules and Regulations § [178-1-6.1] makes clear that a racing association's right to eject a person from its grounds is not an unfettered right* as argued by CTR & S. To the contrary, the regulation which permits a racing association to eject a person contains the following restrictive language: "***However, all***

---

[7](...continued) throughout this quotation.

10

*occupation permit holders who are ejected have the right of appeal to the Racing Commission*." W. Va. C.S.R § [178-1-6.1] ([E]mphasis added). This provision emanates from the United States Supreme [Court's] decision in *Barry v. Barchi*, 443 U.S. 55, 99 S. Ct. 2642, 61 L. Ed. 2d 365 (1979), wherein the Supreme Court determined that there is a property interest in a license or permit issued by a state racing commission, like the permit issued to the jockeys in the instant matter, sufficient to invoke the Due Process Clause. *Id*. at 64, 99 S. Ct. 2642; *see Hubel*, 376 F. Supp. at 4 ("Once a license has been awarded a horse trainer, however, it cannot be suspended or revoked without affording the trainer due process of law. *Brennan v. Illinois Racing Board*, 42 Ill. 2d 352, 247 N.E.2d 881 (1969)."). Consequently, under the express language of the State rule, if a racing association ejects a permit holder that permit holder is entitled to appeal the ejection to the Racing Commission. W. Va. C.S.R § [178-1-6.1].

In providing for an administrative review of the decision to eject, the Legislature has placed the ultimate decision, subject to judicial review, of whether the permit holder should be ejected with the Racing Commission. Pursuant to the West Virginia Constitution, Article VIII, Section 13,

> [e]xcept as otherwise provided in this article, such parts of the common law, and of the laws of this State as are in force on the effective date of this article and are not repugnant thereto, shall be and continue the law of this State until altered or repealed by the legislature.

*Id*. As the Court previously held, "[o]ne of the axioms of statutory construction is that a statute will be read in context with the common law unless it clearly appears from the statute that the purpose of the statute was to change the common law." Syl. Pt. 2, *Smith v. W. Va. State Bd. of Educ*., 170 W. Va. 593, 295 S.E.2d 680 (1982); *see also Morningstar v. Black and Decker Mfg. Co.*, 162 W. Va. 857, 874, 253 S.E.2d 666, 675 (1979) (stating that "the legislature may alter or amend the common law[.]").

11

It logically follows that the consequence of the Legislature providing a permit holder the right to appeal an ejection to the Racing Commission is that if the Racing Commission disagrees with the ejection and either reverses it or provides for some lesser punishment, such as a thirty-day suspension, then the racing association must abide by the Racing Commission's decision. To allow a racing association, such as CTR & S, to eject a permit holder, such as the jockeys in the instant case, notwithstanding any measures taken by the Racing Commission upon an appeal of the permit holder would render the Legislative rule meaningless. *In other words, if the Legislature intended for a racing association to have an unfettered right to eject the permit holder there would have been no reason for the Legislature to add the language "[h]owever, all occupation permit holders who are ejected have the right of appeal to the Racing Commission*[.]"  W. Va. W. Va. C.S.R. § [178-1-6.1].  *Thus, by providing the permit holder with a right to appeal an ejection, the Legislature necessarily conditions the racing association's ability to eject a permit holder on a review by the Racing Commission.*

*PNGI Charles Town Gaming, LLC v. Reynolds*, 229 W. Va. 123, 130-32, 727 S.E.2d 799, 806-08 (2011) (some emphasis and footnote 7 added; additional footnotes omitted).

Accordingly, the *Reynolds* Court held that "[a]n ejection of a permit holder by either a racing association or the stewards is subject to review by the West Virginia Racing Commission as set forth in West Virginia Code § 19-23-6 (2007 & Supp. 2011) and West Virginia Code of State Rules § [178-1-6.1]."[8]  Syl. pt. 3, *Reynolds,* 229 W. Va. 123, 727 S.E.2d 799.[9]

[8]See *supra* note 2 for an explanation of why this citation has been altered.

[9]Syllabus point 3 of *Reynolds* cites to W. Va. Code § 19-23-6 (2007 & Supp. 2011) because

the Legislature has placed with the Racing Commission, "full

(continued...)

12

Based upon the analysis of the *Reynolds* Court, it is clear that the specific benefit at issue, *i.e.* a racing association's power to eject a permit holder from its premises, is a specific benefit that originally was granted at common law. However, this power has since been altered and limited by the Legislature in W. Va. W. Va. C.S.R. § 178-1-6.1, which is a legislative rule. Because the burden of proof rule, *i.e.*, 178 W. Va. C.S.R. 6 § 4.7.d., does not grant or deny a racing association the power to eject permit holders from its premises, the burden of proof rule is not a legislative rule.[10] *See, e.g.*, *State ex rel. Kincaid v. Parsons*, 191

---

[9](...continued)
jurisdiction over and shall supervise all horse racing meetings, all dog racing meetings and all persons involved in the holding or conducting of horse or dog racing meetings and, in this regard, it has plenary power and authority . . . ." W. Va. Code § 19-23-6 . . . . Further, West Virginia Code § 19-23-6(8) specifically provides that the Racing Commission has the power

> [t]o investigate alleged violations of the provisions of this article, its reasonable rules and regulations, orders and final decisions and to take appropriate disciplinary action against any licensee or permit holder or construction permit holder for the violation thereof or institute appropriate legal action for the enforcement thereof or take such disciplinary action and institute such legal action[.]

*Id.*

*Reynolds*, 229 W. Va. at 130, 727 S.E.2d at 806 (footnote omitted). W. Va. Code § 19-23-6 was amended in 2011; however, changes made to the above quoted language were merely stylistic. *See* W. Va. Code § § 19-23-6(8) (2011) (Supp. 2014).

[10]PNGI asserts that the burden of proof rule affects private rights by reversing
(continued...)

13

W. Va. 608, 447 S.E.2d 543 (1994) (striking down rule adopted by administrator of a regional jail as legislative rule not properly authorized by legislature where rule, which imposed complete ban on smoking and smokeless tobacco, deprived inmates of valuable privilege and long-standing customary right); *Chico Dairy Co. Store No. 22 v. West Virginia Human Rights Comm'n*, 181 W. Va. 238, 244, 382 S.E.2d 75, 81 (1989) (rejecting Human Rights Commission rule extending definition of "handicap" to include "perception of handicap" as legislative rule not properly authorized by Legislature based upon finding that rule "expressly extends the statutory definition of 'handicap' so as to form a basis for the imposition of civil sanctions under the Act, as was done in this case; the rule confers a right not provided by law; and the rule affects private rights and purports to regulate private conduct"). We next consider the rule under the statutory definition of a procedural rule.

**2.    The Burden of Proof Rule Is a Procedural Rule.**  The term "procedural rule" is defined by the Act as "every rule, as defined in subsection (I) of this

---

[10](...continued)
the traditional burden of proof to the non-appealing party.  As will be pointed out in the next section, there are circumstances where the burden of proof is placed on the non-appealing party and this has been done in other contexts in West Virginia by procedural rule.  *See, e.g.,* 156 W. Va. C.S.R. 1 § 3 (West Virginia Public Employees Grievance Board procedural rule stating that, in disciplinary matters, "the burden is on the employer to prove that the action taken was justified.").  In addition, PNGI asserts that the Racing Commission's burden of proof rule establishes a new standard of proof inconsistent with existing fundamental rights of landowners to exclude persons.  This argument was resolved by this Court in *Reynolds*, which, as discussed above, recognized that the Legislature has altered the common law right of a racing association to eject a permit holder.

section, which fixes rules of procedure, practice or evidence for dealings with or proceedings before an agency, including forms prescribed by the agency[.]" W. Va. Code § 29A-1-2(g).

Applying the plainly worded definition above,[11] we find the Racing Commission's burden of proof rule fixes a rule of evidence insofar as it merely establishes that a racing association that has exercised its limited power to eject a permit holder from its premises must, when the permit holder has appealed the action to the Racing Commission, present the evidence upon which it based its decision to eject in order to establish that its action complied with state law. In this regard, we note that in West Virginia the burden of proof for administrative proceedings is commonly established by procedural rule. *See* 1 W. Va. C.S.R. 2 §§ 3.10 (m) & (n) (West Virginia Board of Accountancy procedural rules setting out burden of proof for contested case hearings); 32 W. Va. C.S.R. 8 §§ 3.10.13 & 3.10.14 (West Virginia Board of Acupuncture procedural rules setting out burden of proof for contested case hearings); 2 W. Va. C.S.R. 2 § 6.6.13 (West Virginia Board of Architects procedural rule setting out burden of proof for disciplinary actions against architects); 107 W. Va. C.S.R. 1 § 3.11 (West Virginia Board of Banking and Financial Institutions procedural rule setting out burden of proof); 121 W. Va. C.S.R. 1 § 63 (West Virginia Office

---

[11]*See* Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.").

of Tax Appeals procedural rule setting out burden of proof); 156 W. Va. C.S.R. 1 § 3 (West Virginia Public Employees Grievance Board procedural rule setting out burden of proof); 194 W. Va. C.S.R. 2 § 3.9 (*l*) & (m) (Massage Therapy Licensure Board procedural rules setting out burden of proof); 31 W. Va. C.S.R. 3 § 3.9(m) & (n) (West Virginia Board of Licensed Dietitians procedural rules setting out burden of proof); 16 W. Va. C.S.R. 7 § 5.9.*l.* (West Virginia Board of Physical Therapy procedural rule setting out burden of proof); 23 W. Va. C.S.R. 3 § 6.6.m. (Board of Professional Surveyors procedural rule setting out burden of proof: "At any hearing upon a complaint filed against a professional surveyor, or any hearing under subsection 5.2 of this Rule, the Board shall have the burden of proof and shall present its evidence and/or testimony in support of the charges first."); 87 W. Va. C.S.R. 9 § 2.9.13. (State Fire Commission procedural rule setting out burden of proof); 4 W. Va. C.S.R. 3 § 3.10(m) (West Virginia Board of Chiropractic Examiners procedural rule setting out burden of proof); 30 W. Va. C.S.R. 6 § 3.10.13. (West Virginia Board of Respiratory Care procedural rule setting out burden of proof); 200 W. Va. C.S.R. 2 § 3.10.13. (State Board of Registration for Foresters procedural rule setting out burden of proof); 19 W. Va. C.S.R. 5 § 3.10.13. (West Virginia Board of Examiners for Registered Professional Nurses procedural rule setting out burden of proof); 26 W. Va. C.S.R. 2A § 3.10.12. (West Virginia Board of Veterinary Medicine procedural rule setting out burden of proof); 27 W. Va. C.S.R. 6 § 5.11.m. (Board of Examiners in Counseling procedural rule setting out burden of proof); 18 W. Va. C.S.R. 3 § 3.10.13. (West Virginia Medical Imaging and

16

Radiation Therapy Technology Board of Examiners procedural rule setting out burden of proof); 14 W. Va. C.S.R. 3 § 3.10.m. (West Virginia Board of Optometry procedural rule setting out burden of proof); 29 W. Va. C.S.R. 3 § 3.10.13. (West Virginia Board of Examiners for Speech-Language Pathology and Audiology procedural rule setting out burden of proof); 24 W. Va. C.S.R. 3 § 3.10.13. (West Virginia Board of Osteopathic Medicine procedural rule setting out burden of proof); 6 W. Va. C.S.R. 4 § 3.2.10.m. (Board of Funeral Service Examiners procedural rule setting out burden of proof); 85 W. Va. C.S.R. 7 § 5.10. (Workers' Compensation Rules of the West Virginia Insurance Commissioner procedural rule setting out burden of proof); 37 W. Va. C.S.R. 1 § 2.7. (Mine Board of Appeals procedural rule setting out burden of proof); 96 W. Va. C.S.R. 2 § 9.3. (Workforce West Virginia procedural rule setting out burden of proof); 56 W. Va. C.S.R. 1 § 3.8. (Office of Miners' Health, Safety and Training procedural rule setting out burden of proof); 13 W. Va. C.S.R. 2 § 7.8.m. (Board of Occupational Therapy procedural rule setting out burden of proof); 50 W. Va. C.S.R. 1 § 5.8. (Shallow Gas Well Review Board procedural rule setting out burden of proof); 92 W. Va. C.S.R. 2 § 9.9.j. (West Virginia Parole Board procedural rule setting out burden of proof).

PNGI argues, however, that the Racing Commission has improperly placed the burden of proof on a respondent racing association when a permit holder is the appealing party in an ejection appeal. We disagree. As PNGI correctly observes, the general practice

17

in administrative proceedings is that "an applicant for relief . . . has the burden of proof." 73A C.J.S. *Public Administrative Law & Procedure* § 296 (2014). However, there are circumstances in which this general rule is not followed. It appears that, in hearings involving complaints against a licensed professional or in hearings involving disciplinary matters, the entity bringing the charges, or the licensing board, may be required to bear the burden of proof. For example, "[a]t any hearing upon a complaint filed against an architect . . . the [West Virginia Board of Architects] shall have the burden of proof and shall present its evidence and/or testimony in support of the charges first." 2 W. Va. C.S.R. 2 § 6.6.13. *See also* 16 W. Va. C.S.R. 7 § 5.9.*l.* ("The [West Virginia Board of Physical Therapy,] after charges have been brought against a Registrant[,] has the burden of proof in substantiating the charges and must present its evidence and/or testimony in support of the charges first."). Similarly, the West Virginia Public Employees Grievance Board requires, by procedural rule, that "in disciplinary matters . . . the burden is on the employer to prove that the action taken was justified." 156 W. Va. C.S.R. 1 § 3. Furthermore, in the context of unemployment compensation, this Court has observed that "'the burden of persuasion is upon the former employer to demonstrate by the preponderance of the evidence that the claimant's conduct falls within a disqualifying provision of the unemployment compensation statute.' *Peery v. Rutledge*, 177 W. Va. 548, 552, 355 S.E.2d 41, 45 (1987)." *Adkins v. Gatson*, 218 W. Va. 332, 336, 624 S.E.2d 769, 773 (2005). Because we perceive the administrative appeal of an ejectment to be similar in nature to the examples set out above

18

involving disciplinary and grievance type proceedings, we agree with the Racing Commission that the burden of proof is properly placed upon the ejecting racing association.

Furthermore, we find, as a practical matter, that the burden of proof should be on an ejecting racing association. A racing association may exercise its power to eject only when a permit holder has "acted improperly or engaged in behavior that is otherwise objectionable." 178 W. Va. C.S.R. 6 § 4.7.d. *Accord* 178 W. Va. C.S.R. 1 § 6.2. The basis for a racing association's ejectment being reviewed on appeal is generally known only to the racing association; and, the racing association possesses the evidence supporting its decision. *See, e.g.*, *Zenith Indus. Corp. v. Department of Treasury*, 130 Mich. App. 464, 468, 343 N.W.2d 495, 497 (1983) ("It was definitely within the power of the tribunal to shift the burden of proof to the taxpayer if it concluded that the taxpayer was best able to present the evidence necessary . . . ."). Finally, we note that at least one other jurisdiction wherein a racing association's ejectment is subject to administrative review has recognized, without addressing the issue, that the burden of proof was properly placed on a racetrack to demonstrate "that its decision to exclude . . . was reasonable." *See Foxboro Harness, Inc. v. State Racing Comm'n*, 42 Mass. App. Ct. 82, 86, 674 N.E.2d 1322, 1325 (1997).

Based upon the foregoing analysis, we now hold that the West Virginia Racing Commission has properly established, by procedural rule promulgated at 178 W. Va. C.S.R.

19

6 § 4.7.d., that, "[i]n any hearing on an appeal by a permit holder of an ejection [of said permit holder] by an association, the association shall have the burden of proving by a preponderance of the evidence that the permit holder acted improperly or engaged in behavior that is otherwise objectionable pursuant to 178 W. Va. C.S.R. 1, § 6.2. or 178 W. Va. C.S.R. 2, § 6.2." Applying this holding, we find no error in the circuit court's grant of summary judgment to the Racing Commission based upon that court's finding that the burden of proof rule is a properly enacted procedural rule.

### B. Stay Rule

PNGI next seeks to have this Court strike down the Racing Commission's rule allowing a permit holder who has been ejected by an association to apply for a stay of the ejection pending review by the Racing Commission. The Racing Commission's stay rule provides that

> 4.3.a. A permit holder who has been ejected by an association may apply for a stay to the Racing Commission or to the member of the Racing Commission designated to rule upon stay requests.
>
> 4.3.b. An application for a stay must be filed with the Commission's executive director at the Racing Commission's principal office. An application for stay will not be considered or ruled upon unless and until the permit holder has filed an appeal of the ejection in accordance with subsection 4.2 of this rule.
>
> 4.3.c. An application for a stay must be in writing on a form prescribed by the Racing Commission and shall include:

20

4.3.c.1.   The name, address, telephone number and signature of the person requesting the stay;

4.3.c.2.  A statement of the justification for the stay; and,

4.3.c.3.   A sworn, notarized statement that the permit holder requesting the stay has a good faith belief that the stay request is meritorious and is not taken merely to delay the effect of the ejection imposed by the association.

4.3.d.  A copy of a stay request filed by an ejected permit holder shall be provided by the Racing Commission to a person designated by the association to receive the stay request on its behalf.

4.3.e.  The association may respond in writing to a stay request filed by an ejected permit holder.  Such response shall be filed with the Commission's executive director by a deadline established by the Commission or the member of the Racing Commission designated to rule upon stay requests.  A copy of such response shall be served upon the permit holder by the association.

4.3.f.  The granting of a stay is an extraordinary remedy. The Racing Commission or the member of the Racing Commission designated to rule upon stay requests may grant or deny a stay request after considering and balancing the following factors:

4.3.f.1.  The likelihood that the permit holder requesting the stay will prevail upon the merits of his or her ejection appeal.

4.3.f.2.  The likelihood of irreparable harm to the permit holder if a stay is denied pending disposition of his or her ejection appeal.

4.3.f.3.   The likelihood of irreparable harm to the association if a stay is granted pending disposition of the permit holder's ejection appeal.

4.3.f.4.  The public interest.

4.3.f.5.  Any other information deemed relevant by the Commission or the member designated to rule upon stay requests.

4.3.g.  Rulings on stay requests shall be issued in writing to the parties.  The Racing Commission or the member of the Racing Commission designated to rule upon stay requests may rescind a stay granted under this subsection taking into account only a change in circumstances or new information not available at the time of the original grant of stay, and reconsideration and rebalancing the factors set forth in subdivision 4.3.f. in light of such change or new information.

4.3.h.  The fact that a stay is granted is not a presumption that the ejection imposed by the association is invalid.

178 W. Va. C.S.R. 6 § 4.3.

PNGI argues that the circuit court erred in concluding that the Racing Commission's stay rule did not exceed the Racing Commission's lawful powers and further argues that the stay rule is a legislative rule, not a procedural rule and, therefore, is invalid insofar has it has not received legislative approval.  We address each argument in turn.

**1.  The Racing Commission Did Not Exceed its Lawful Powers.**  PNGI argues that the Legislature has not granted to the Racing Commission the power to stay

22

ejections of permit holders by racing associations.[12]  In support of this argument, PNGI relies

on W. Va. Code § 19-23-16(c) (2011) (Supp. 2014), which provides, in relevant part, that

> [a] demand for hearing shall operate automatically to stay or suspend the execution of any order suspending or revoking a license, but a demand for hearing shall not operate automatically to stay or suspend the execution of any order suspending or revoking a permit.  Upon the written request of any permit holder who has been adversely affected by an order of the stewards or judges, a stay may be granted by the Racing Commission, its chairman, or by a member of the commission designated by the chairman.  A request for a stay must be filed with the Racing Commission's executive director no later than the deadline for filing a written demand for a hearing before the commission.  If a stay is granted, it is not a presumption that the order of the stewards or judges is invalid.

PNGI reasons that, because the foregoing statute fails to grant the Racing Commission the

power to grant a stay in connection with a permit holder's ejection appeal, the Legislature

has necessarily denied the same.  PNGI's reliance on this statutory provision, and its

reasoning, are misplaced.  First, this statutory provision simply does not apply to ejection

proceedings.  Rather, it expressly applies to the entry of an order *suspending or revoking* a

license or a permit, and procedures related thereto.  Furthermore, PNGI's reasoning asks this

Court to read into W. Va. Code § 19-23-16 a provision limiting the authority of the Racing

Commission that the Legislature has not enacted.  Legislating in this manner is not within

---

[12]PNGI further characterizes the stay as amounting to the power to reinstate permit holders.  Notably, as discussed below, the Racing Commission has been granted the power to reinstate permit holders who have been ejected from a racing association's premises.

the authority of this Court. "It is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker*, 196 W. Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) (citations omitted). *See also* Syl. pt. 1, *Consumer Advocate Div. v. Public Serv. Comm'n*, 182 W. Va. 152, 386 S.E.2d 650 (1989) ("A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten.").

Contrary to the assertions of PNGI, we find that the Racing Commission has been given the authority to issue a stay of a racing association's ejection of a permit holder. It is well established that

> [a]dministrative agencies and their executive officers are creatures of statute and delegates of the Legislature. Their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. They have no general or common-law powers but only such as have been conferred upon them by law expressly or by implication.

Syl. pt. 3, *Mountaineer Disposal Serv., Inc. v. Dyer*, 156 W. Va. 766, 197 S.E.2d 111 (1973). "Correspondingly, administrative agencies also possess 'such powers as are reasonably and necessarily implied in the exercise of their duties in accomplishing the purposes of the act.'" *McDaniel v. West Virginia Div. of Labor*, 214 W. Va. 719, 727, 591 S.E.2d 277, 285 (2003) (quoting *State Human Rights Comm'n v. Pauley*, 158 W. Va. 495, 498, 212 S.E.2d 77, 78

24

(1975)).  As discussed above, the Racing Commission possesses the legislatively granted authority to review "[a]n ejection of a permit holder by . . . a racing association."  Syl. pt. 3, *Reynolds*, 229 W. Va. 123, 727 S.E.2d 799.  *See also* 178 W. Va. C.S.R. 1 § 6.1. (legislative rule declaring that "all occupational permit holders who are ejected have the right of appeal to the Racing Commission").  Commensurate with the authority to review an ejection is the authority to reverse or modify an ejection.  *See* 178 W. Va. C.S.R. 6 § 4.7.e. (stating that "[t]he Racing Commission may reject, affirm, or modify any ejection imposed by the association on a permit holder, and the association and the permit holder shall abide by any orders, restrictions or conditions issued by the Commission in connection with its decision on the ejection appeal").  It stands to reason, therefore, that the Racing Commission likewise possesses the implied authority to grant a stay of an ejectment pending its review of the same.  This is particularly true given the protections that have been granted to permit holders, such as the right to appeal an ejection, in relation to the recognition "that there is a property interest in a license or permit issued by a state racing commission."  *Reynolds*, 229 W. Va. at 132, 727 S.E.2d at 808 (citing *Barry v. Barchi*, 443 U.S. 55, 99 S. Ct. 2642, 61 L. Ed. 2d 365 (1979)).  We next consider whether the stay rule is procedural or legislative.

**2.** **The Stay Rule Is a Procedural Rule, Not a Legislative Rule.**  In addition, PNGI argues that the stay rule is a legislative rule, not a procedural rule, and therefore is invalid insofar as it has not received legislative approval.  PNGI contends that

25

the "stay" rule is "determinative on an[] issue affecting private rights, privileges or interests," and therefore meets the definition of a legislative rule provided in W. Va. Code § 29A-1-2(d). We disagree. As with the burden of proof rule discussed above, PNGI complains that the stay rule infringes upon a racing association's right to exclude persons from its property. Also noted above with respect to our analysis of the burden of proof rule, is our recognition that an association's power to eject a permit holder is subject to the restrictions imposed upon that power by 178 W. Va. C.S.R. 1 § 6.1, a legislative rule providing that

> [a]ny person ejected by the stewards or the association from the grounds of an association shall be denied admission to the grounds until permission for his or her reentry has been obtained from the association and the Racing Commission. ***However all occupation permit holders who are ejected have the right of appeal to the Racing Commission.***

(Emphasis added). *Accord* Syl. pt. 3, *Reynolds*, 229 W. Va. 123, 727 S.E.2d 799 (holding that "[a]n ejection of a permit holder by either a racing association or the stewards is subject to review by the West Virginia Racing Commission as set forth in West Virginia Code § 19-23-6 (2007 & Supp. 2011) and West Virginia Code of State Rules § [178-1-6.1]."). Thus, it is not the stay rule that restricts a racing association's right to exclude a permit holder from its premises. Rather, the restriction on a racing association's right to exclude a permit holder from its premises comes from 178 W. Va. C.S.R. 1 § 6.1 and this Court's holding in *Reynolds*. The circuit court observed that "the stay framework neither grants nor denies the permit holder or the racetrack any right. It merely provides a framework for the permit holder to expeditiously request and receive provisional relief that the Commission was

26

already authorized to grant under our legislative scheme." We find no error in this conclusion. The Racing Commission's stay rule is not a legislative rule.

Instead, the Racing Commission's stay rule "fixes rules of procedure . . . for . . . proceedings before" the Racing Commission. W. Va. Code § 29A-1-2(g). *See Kennedy v. City of Zanesville, OH,* No. 2:03-CV-1047, 2008 WL 3993894, at *1 (S.D. Ohio Aug. 20, 2008) (observing that "a stay of execution is a procedural rule, not a substantive law that effects the outcome of litigation" (citing *Markowitz & Co. v. Toledo Metro. Hous. Auth.*, 74 F.R.D. 550, 551 (N.D. Ohio 1977))). *See also Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 998 (11th Cir. 2004) (referring to a stay as a "procedural mechanism"); *Selmon v. Portsmouth Drive Condo. Ass'n*, 89 F.3d 406, 409 (7th Cir. 1996) (same); *Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1381 n.7 (S.D. Fla. 2014) (same); *United States ex rel. TGK Enters., Inc. v. Clayco, Inc.*, 978 F. Supp. 2d 540, 548 (E.D.N.C. 2013) (same); *Blimpie Capital Venture, Inc. v. Palms Plaza Partners, Ltd.*, 636 So. 2d 838, 841 (Fla. Dist. Ct. App. 1994) (same). Thus, we conclude that the circuit court did not err in concluding that the Racing Commission's stay provisions are procedural and in granting summary judgment to the Racing Commission on this issue. In addition, we now expressly hold that, pursuant to 178 W. Va. C.S.R. 6 § 4.3., the West Virginia Racing Commission has the authority to grant a stay to a permit holder who has been ejected by a

27

racing association.[13]

# IV.

# CONCLUSION

Based upon the analysis set out in the body of this opinion, we find that the Circuit Court of Kanawha County correctly concluded that two rules promulgated by the Racing Commission, the rule establishing the burden of proof for ejections by a racing association, 178 W. Va. C.S.R. 6 § 4.7.d, and the rule allowing the Racing Commission to grant a stay of a permit holder's ejection by a racing association pending review, 178 W. Va. C.S.R.6 § 4.3., are properly enacted procedural rules that are within the authority of

---

[13]We note that the Racing Commission states that, to date, it has not stayed any of PNGI's ejections. Nevertheless, the Racing Commission explains that granting stays within the confines of the procedures it has established to handle them provides a mechanism for it to grant provisional relief in furtherance of its authority. Moreover, the interests of racing associations are protected by the fact that the Racing Commission has declared that "[t]he granting of a stay is an extraordinary remedy." 178 W. Va. C.S.R. 6 § 4.3.f. The Racing Commission may grant this extraordinary remedy only after considering certain factors, such as: "The likelihood that the permit holder requesting the stay will prevail upon the merits of his or her ejection appeal," 178 W. Va. C.S.R. 6 § 4.3.f.1.; "[t]he likelihood of irreparable harm to the permit holder if a stay is denied pending disposition of his or her ejection appeal," 178 W. Va. C.S.R. 6 § 4.3.f.2.; and "[t]he likelihood of irreparable harm to the association if a stay is granted pending disposition of the permit holder's ejection appeal," 178 W. Va. C.S.R. 6 § 4.3.f.3.

the Racing Commission.  Therefore, we affirm the November 14, 2013, order of the Circuit

Court of Kanawha County granting summary judgment to the Racing Commission.

Affirmed.