No. 14-0214 - *Patricia S. Reed, Commissioner of the West Virginia Division of Motor Vehicles  v.  Jason L. Thomspon*

**FILED**

**April 24, 2015**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, dissenting:

The majority wholly fails to recognize that the May 16, 2013, order of the Office of Administrative Hearings ("OAH") was clearly wrong in view of the agency's disregard of critical evidence in the administrative record of this case. In addition, I disagree with the majority's conclusion that the OAH lacked the implied authority to timely correct its own order. Accordingly, I am compelled to dissent.

**Even assuming the May 16th order was
the final order, a reversal was required.**

The majority has disappointingly engaged in only part of the analysis required for this case. Even if the OAH lacked the implied authority to reconsider its May 16th order, an automatic affirmation of that order is neither required nor warranted. In addition to ruling that the OAH lacked authority to entertain a motion for reconsideration, the circuit court upheld, with very little discussion, the administrative law judge's findings of fact. Courts are to review the agency's order to ensure that it is not clearly wrong in view of the reliable, probative and substantial evidence on the whole record, and is not arbitrary, capricious, or characterized by abuse of discretion. *See* Syl. Pt. 2, in part, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W.Va. Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342

1

(1983) (quoting W.Va. Code § 29A-5-4(g)).[1] Had the circuit court, or the majority, performed such a review of the May 16th order and the record on appeal, they would have been compelled to conclude that the May 16th order was clearly wrong, arbitrary, and capricious.

Huntington Police Officer Richard Kern testified that on April 2, 2012, he observed a single cab truck traveling in an area known for illegal drug activity. The officer decided to watch the truck. The officer testified that he personally witnessed Mr. Thompson driving the truck, stopping and parking on the roadside, exiting his vehicle, and begin talking on a cell phone. The officer approached Mr. Thompson on foot and immediately observed the absence of any passengers. The officer testified that Mr. Thompson had the odor of an alcoholic beverage on his breath, glassy eyes, and slurred speech; was unsteady while exiting the truck and while walking and standing on the roadway; and further admitted to the officer that he had consumed six to eight beers. The officer saw two open beers in the cab of the truck; there were also two beers in a cooler and an unknown quantity of beer in an open case inside the vehicle. Mr. Thompson failed the horizontal gaze nystagmus test and refused to take the walk-and-turn and one-leg stand field sobriety tests. Officer Kern then arrested Mr. Thompson for DUI.

---

[1]*Shepherdstown Volunteer Fire Department* was decided under the 1964 version of West Virginia Code § 29A-5-4(g), but the operative statutory language remains the same today.

After being transported to the police station, Mr. Kern signed an implied consent form acknowledging that his driver's license would be revoked if he refused to submit to the designated secondary chemical test.  Nonetheless, Mr. Kern refused to submit to the secondary breath test.  Accordingly, pursuant to the requirements of West Virginia Code §§ 17C-5-7 (2013) and 17C-5A-1 (2013), the DMV Commissioner revoked Mr. Thompson's operator's license on two separate grounds:  DUI and the implied consent violation.  The Commissioner entered a companion order disqualifying Mr. Thompson's commercial driver's license on these same grounds.  *See* W.Va. Code § 17E-1-13 (2013).

Mr. Thompson objected to the Commissioner's orders, and the OAH  held an evidentiary hearing on October 12, 2012.  Officer Kern was unable to attend that hearing. Mr. Thompson testified and admitted that he had consumed six or seven beers.  However, with the arresting officer not present to contradict him, Mr. Thompson asserted that he had not been driving on the date in question.  Instead, he claimed that his ex-wife had driven and parked the truck, before she exited the vehicle and walked away.  Thereafter, the OAH reconvened the administrative hearing on February 7, 2013.  At this second day of the hearing, Officer Kern testified to having personally witnessed Mr. Thompson driving the truck and to having observed no one else at the scene.

In the May 16, 2013, order, the OAH found that the testimony of Officer Kern

3

and Mr. Thompson conflicted on the issue of whether Mr. Thompson had been driving. The OAH resolved the conflict in favor of Mr. Thompson's version, finding "the fact that there were two open beers instead of one beer inside the truck implies that someone else was with [Thompson]." On this basis, the OAH discredited the officer's testimony, finding that Mr. Thompson "did not drive on the night in question," and overturned the Commissioner's revocation and disqualification orders.

In short, based solely upon the presence of two open beers in the truck, the OAH concluded that the police officer was prevaricating when he testified regarding his personal observations of Mr. Thompson driving. This finding is ludicrous given that Mr. Thompson admitted he had consumed six to eight beers. There is nothing in the record to indicate how much, if any, liquid remained in those two open containers, and Mr. Thompson could have easily consumed alcohol from both of the containers. Furthermore, the presence of two open beers is in no way indicative of who was driving the truck.

Notably, the May 16th order failed to address and consider critical evidence when assessing the credibility of Officer Kern and Mr. Thompson. Where there is a direct conflict in critical evidence, the administrative law judge "may not elect one version of the evidence over the conflicting version unless the conflict is resolved by a reasoned and articulate decision, weighing and explaining the choices made[.]" Syl. Pt. 6, in part,

4

*Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1986). The OAH did not consider that, on the night in question, Mr. Thompson never told the officer that somebody else had been driving. Logic suggests that a person wrongly arrested for *driving* under the influence would immediately seek to inform the arresting officer regarding the identity of the vehicle's driver. Moreover, the OAH failed to acknowledge that, despite the opportunity to present evidence at two separate hearings, Mr. Thompson offered no evidence from his ex-wife to support his claim that she was the actual driver on the night in issue.[2]

The circuit court failed to consider these issues in its order, stating only that there was evidence to support either of the OAH's orders and that it would not substitute its own opinion on the evidence. Because the two administrative orders were diametrically opposed regarding whether Mr. Thompson was driving, the reviewing court was obligated to determine whether the agency's findings of fact on this issue were clearly wrong, arbitrary, or capricious. Just as the circuit court disregarded its duty to weigh the disputed evidence, the majority equally failed to consider the clear evidence in the record that Mr. Thompson was driving under the influence on the date in question. The majority dismisses the OAH's nonsensical finding about the purported meaning of the two open beers by summarily stating

---

[2]In its June 28, 2013, order on reconsideration, the OAH did consider that Mr. Thompson never told the arresting officer that his ex-wife had been driving. The OAH also took into account Mr. Thompson's failure to offer any corroborating evidence from his ex-wife. A review of the June 28th order makes clear that this was critical to the OAH's changed ruling upon reconsideration.

5

that the "OAH provided an explanation for why it found Mr. Thompson's testimony more credible."

While mindful that findings of fact by an administrative law judge are accorded deference unless the reviewing court believes those findings to be clearly wrong, my review of the record leads inescapably to the conclusion that the OAH's finding in the May 16th order regarding the vehicle's driver was clearly wrong. *See Muscatell*, 196 W.Va. at 590, 474 S.E.2d at 520, syl. pt. 1, in part. In consideration of the entire record, such a finding could only be reached by overlooking, or perhaps intentionally discarding, pivotal evidence that was introduced in this case. Indeed, the erroneous conclusions reached in the May 16th ruling signal "wrong with the 'force of a five-week-old, unrefrigerated dead fish.'" *Brown v. Gobble*, 196 W.Va. 559, 563, 474 S.E.2d 489, 493 (1996) (quoting *United States v. Markling*, 7 F.3d 1309, 1319 (7th Cir. 1993)). As a result, I am convinced that the May 16th order, if viewed as the "final order," should be reversed under well-established principles of administrative review and the Commissioner's revocation and disqualification orders should be reinstated.

**The OAH had the implied authority
to timely correct its own order.**

As the majority explains, in May of 2013 when the OAH reconsidered its May 16th order, there was no statute or legislative rule in effect that *expressly* permitted the OAH

6

to do so. Although a legislative rule allowing the OAH to entertain motions to reconsider on the grounds of, *inter alia*, the "failure to discuss relevant evidence" had been approved by the Legislature, it did not take effect until July 1, 2013. W.Va. C.S.R. § 105-1-18 (2013).[3] Nonetheless, even before the legislative rule took effect, I believe the OAH had the implied authority to timely correct an order that failed to discuss relevant evidence and was otherwise clearly wrong, arbitrary, and capricious.

This Court has repeatedly recognized that in addition to express powers, "administrative agencies also possess 'such powers as are reasonably and necessarily implied in the exercise of their duties in accomplishing the purposes of the act.'" *McDaniel v. West Virginia Div. of Labor*, 214 W.Va. 719, 727, 591 S.E.2d 277, 285 (2003) (quoting *State Human Rights Comm'n v. Pauley*, 158 W.Va. 495, 498, 212 S.E.2d 77, 78 (1975)); *accord*, *PNGI Charles Town Gaming, LLC v. W.Va. Racing Comm'n*, 234 W.Va. 352, __, 765 S.E.2d 241, 253 (2014). Moreover, "'[a]n administrative agency has, and should be accorded, every power which is indispensable to the powers expressly granted, that is, those powers which are necessarily, or fairly or reasonably, implied as an incident to the powers expressly granted.' *Pauley*, 158 W.Va. at 497-98, 212 S.E.2d at 78-79 (quoting 1 Am.Jur.2d *Administrative Law* § 44 and citations omitted)." *Walker v. W.Va. Ethics Comm'n*, 201

---

[3]According to the OAH's final filing of these legislative rules with the Secretary of State, the rules were approved by the Legislature through S.B. 281 on April 12, 2013.

7

W.Va. 108, 120-21, 492 S.E.2d 167, 179-80 (1997).

We have previously recognized that state agencies have certain implied powers with regard to the "contested case" hearings over which those agencies preside. For example, in *PNGI*, we held that the Racing Commission had the implied authority to grant a stay of a racetrack's ejection of a permit holder from the racetrack's premises. We reasoned that although the statute did not expressly allow the Racing Commission to order a stay of a racetrack's decision, this authority was implied from the Racing Commission's authority to consider appeals of those decisions. *PNGI*, 234 W.Va. at __, 765 S.E.2d at 253. Similarly, in *Walker*, the Ethics Commission reviewed the hearing examiner's finding that the West Virginia Ethics Act had not been violated and concluded that a critical piece of evidence had not been evaluated. *Walker*, 201 W.Va. at 113-14, 492 S.E.2d at 172-73. The Ethics Commission remanded the case back to the hearing examiner for further proceedings. On remand, the hearing examiner changed his finding even though no additional dispositive evidence was presented. *Id.* Although the authorizing statute did not expressly provide for remands, this Court held that such authority was implied from, and necessitated by, the Ethics Commission's statutory authority to commence investigations, conduct hearings, and render final decisions. *Id.* at 120-21, 492 S.E.2d at 179-80.

With regard to the case *sub judice*, the Legislature has expressly directed the

8

OAH to hold administrative hearings on appeals of DMV revocation orders. W.Va. Code §§ 17C-5C-3 and -4 (2013) (establishing OAH's jurisdiction and hearing procedures); W.Va. Code § 29A-5-1 (2013) (providing for administrative hearing in contested case); W.Va. Code § 17C-5A-2 (2013) (directing OAH to hold hearing and make specific findings). When rendering a decision, the OAH must consider the record from the administrative hearing. W.Va. Code § 17C-5A-2(a). Moreover, every final order of an agency in a contested case must have written findings of fact accompanied by a concise and explicit statement of the underlying facts supporting those findings. W.Va. Code § 29A-5-3 (2013). I submit that the OAH's authority to timely correct its own erroneous order may be fairly and reasonably implied from these statutory duties. As various federal courts of appeal have noted, "[t]he power to reconsider is inherent in the power to decide." *Ivy Sports Medicine, LLC v. Burwell*, 767 F.3d 81, 86 (2014) (quoting *Albertson v. F.C.C.*, 182 F.2d 397, 399 (D.C. Cir. 1950)). *Ivy Sports Medicine* explains that in the absence of an express provision allowing for reconsideration, and unless Congress has provided otherwise, a federal administrative agency has the authority to reconsider its own orders. *Id.*[4]

---

[4]Certainly, an agency's authority to correct its orders is not unending. However, the DMV Commissioner's motion for reconsideration in this case was filed nine days after the initial order was entered, while the case was still within the appeal period. In an opinion frequently cited for the proposition that federal administrative agencies may reconsider their own final orders, the District of Columbia Court of Appeals said that "in the absence of any specific limitation, such a motion [for reconsideration] may be filed within the period for taking an appeal." *Albertson*, 182 F.2d at 399. Of course, now that there is a legislative rule in West Virginia recognizing the OAH's authority to entertain motions for reconsideration, the time constraints set forth in the legislative rule must be followed. *See* W.Va. C.S.R. §

Turning to the cases cited by the majority, in *Atlantic Greyhound Corporation v. Public Service Commission*, 132 W.Va. 650, 54 S.E.2d 169 (1949), this Court upheld the validity of a Public Service Commission rule allowing the agency to rehear its own final orders, even though there was no statute expressly granting this authority. The Court recognized that "[t]he power of administrative authorities to reconsider or modify their own determinations may exist by reason of express[] provision of statute, or its existence may be inferred from a statutory provision." *Id.* at 659-60, 54 S.E.2d at 175. The Court also recognized that denying an agency the authority to rehear a matter over which it has jurisdiction, in view of the agency's express statutory power to prescribe rules of practice and procedure and the promulgation of a rule allowing rehearings, "would disrupt the orderly discharge of the [agency's] duties . . . produce confusion and uncertainty, and add to the number and the frequency of unnecessary appeals." *Id.* at 661, 54 S.E.2d at 175. Admittedly, the Court in *Atlantic Greyhound* was not called upon to decide the precise question at issue in the case *sub judice*, i.e., whether an agency has the implied authority to timely reconsider an order in the absence of a promulgated rule.

Quoting *McDaniel v. West Virginia Division of Labor*, 214 W.Va. 719, 727, 591 S.E.2d 277, 285 (2003), the majority states that courts "must assume that the lawmakers

---

105-1-18.1 (specifying that parties may file motions to reconsider OAH final order within ten days of receipt of final order).

intended to place no greater restraint on the liberties of a citizen than was clearly and unmistakenly indicated by the language they used." However, the legislative approval of W.Va. C.S.R. § 105-1-18, with its express provision allowing reconsideration motions before the OAH, suggests that the authority for such motions is statutorily based. By law, administrative rules must have a statutory basis. *See* W.Va. Code § 29A-4-2(b) (2013) (upon petition for declaratory judgment, court is to declare rule invalid if it exceeds agency's statutory authority). Moreover, the authority claimed by the agency in *McDaniel* bears no resemblance to the authority asserted here. In *McDaniel*, this Court held that the Division of Labor had no authority, express or implied, to award monetary damages. By contrast, the OAH possesses the express authority to enter final orders; the only issue is whether it may reconsider and correct those orders.

A party may have legitimate reasons for seeking an agency's reconsideration of an order, rather than proceeding to initiate an appeal–particularly in a case such as this, where the agency's order failed to address relevant evidence.[5] Logic compels the conclusion that providing an agency with an opportunity to rethink or correct its own order could avoid

---

[5]This Court's ruling in *Appalachian Regional Health Care, Inc. v. West Virginia Human Rights Commission*, 180 W.Va. 303, 376 S.E.2d 317 (1988), that "[t]he Human Rights Commission had no statutory authority to reopen, *sua sponte*, a case properly closed" is wholly inapposite. *Id.* at syl. pt. 4. In that case, the administrative matter was closed for *six years* before the agency reopened it. Moreover, in clear contrast to the instant case, a timely motion for reconsideration was never filed in *Appalachian Regional Health Care*.

the time and expense of an appeal. In the interests of both judicial economy and ensuring that courts adhere to the obligations inherent to the review of contested cases, there is no sound basis for denying an administrative tribunal the opportunity to alter its ruling when the record warrants, if not compels, such a corrected ruling–as it clearly does in this case. [6]

For these reasons, I respectfully dissent.

---

[6]The majority's reliance on *Mustard v. City of Bluefield*, 130 W.Va. 763, 45 S.E.2d 326 (1947), is decidedly misplaced. This Court in *Mustard* did not address the issue of a state agency's authority. *See id.* at 766-67, 45 S.E.2d at 327-28. There was also no discussion of the concept of implied authority.